IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ROBERT C. SMITH,** *et al*,

          Plaintiffs,

v.

**CITY OF CORVALLIS,**

          Defendants,

**Civ. No. 6:14-cv-01382-MC**

**OPINION AND ORDER**

MCSHANE, Judge:

    For the following reasons and as discussed on the record on May 11, 2016 (ECF No. 67), Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED in part and DENIED in part, and Plaintiffs' Motion to Certify the Class (ECF No. 45) is DENIED.

## **PROCEDURAL AND FACTUAL BACKGROUND**

    Plaintiffs (Smith, Albreacht, and Craig) are homeless individuals who bring this action against the defendant City of Corvallis, alleging that the city's policies and practices regarding the notification and execution of the city's "clean ups" or "sweeps" of homeless encampments are illegal. Plaintiffs claim that Corvallis has routinely confiscated and disposed of the personal property of the homeless without adequate notice, just compensation, or due process. They allege that Corvallis' policies and practices violate their state and federal constitutional rights, state and federal statutory law, and state common law.

1 – OPINION AND ORDER

Corvallis denies the allegations and claim that their policies and practices are compliant with all statutory laws and the Constitution.

## STANDARD OF REVIEW

The court must grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir. 1994)). If the moving party shows that there are no genuine issues of material fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P (56)(c).

For class certification, the plaintiffs "bear the burden of demonstrating that they have met each of the requirements of Fed. R. Civ. P. 23(a) and at least one of the requirements of Rule 23(b)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-980 (9th Cir. 2011) (citing *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001)). To establish that the requirements of Fed. R. Civ. P. 23(a) have been satisfied, Plaintiffs must show:

> (1) that the class is so large that joinder of all members is impracticable (numerosity); (2) that there are one or more questions of law or fact common to the class (commonality); (3) that the named parties' claims are typical of the class (typicality); and (4) that the class representatives will fairly and adequate protect the interests of other members of the class (adequacy of representation). *Ellis*, 657 F.3d at 980.

In determining whether Plaintiffs have established and satisfied each of the four requirements under Rule 23(a), this Court is required "to engage in a 'rigorous analysis' of each Rule 23(a) factor...." *Id.* (citing *General Telephone. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).

## DISCUSSION

### I.  Motion to Dismiss

#### A.  Plaintiff Robert C. Smith

The defendant seeks to dismiss Robert C. Smith as a plaintiff in this case because Smith allegedly cannot prove that agents of the defendant seized any of his property except "clearly *abandoned* items," (ECF No. 39 at p.11) and because Smith did not exercise sufficient due diligence in attempting to retrieve his property.  (*Id* at pp. 11-12).

The defendant relies on the declaration of Parks and Recreation employee Michael Hiller, who has known Smith since 2004 and was present during the cleanup of Smith's camp in early August, 2014. Hiller asserts that "all of the property removed from where Mr. Smith's camp had been was clearly abandoned, unusable, and/or soiled" and that "No City employee removed any plastic bins or totes filled with electronics or other property"   (Hiller Decl. at p.4).  However, in the same Declaration, Hiller seems to contradict himself by reclassifying the items taken from Smith's campsite as "junk and soiled items with no apparent value" (Hiller Decl. at p.3), and also by admitting to seizing items that were still in *usable* working order on several occasions during clean-ups:

> At the time of several cleanups, I have spoken with people who are abandoning what appears to be tents and sleeping bags still in working order. When I have asked why they want to leave these items knowing they might eventually be thrown away, I have been told they did not want the item anymore, because they could always get new ones from "Outreach," a local non-profit organization that helps the homeless.

Hiller Decl. at p.4.

In his deposition, Smith directly disputes the defendant's assertions that "nothing of value, and only soiled and unusable items [were] left behind where Smith had been camping" (ECF No. 39 at p.29). According to Smith, on or about August 5, 2014, he returned to his campsite that had been posted by the defendant the previous day, to find that "*everything*" he had moved "about a hundred feet" and placed inside two tents and then covered with a tarp had been taken away (Smith Depo. p. 50, 52, 59-60, 64-65, 108). It seems clear that "everything" includes far more than just the plastic bins filled with electronics that the defendant claims they never saw or took. (see Hiller Decl. at pp. 3-4). Specifically, Smith claims to have lost two tents covered with a large tarp with plastic totes inside, a cook stove, $200 in food, an inflatable mattress, a chair, three additional tarps, multiple pots & pans, a propane tank, a dehumidifier, 20 DVDs, three laptops, three lanterns, a propane heater, an alarm clock, multiple old cell phones and flashlights, dog supplies, 20 shirts, eight pants, six hooded sweatshirts, three jackets, socks, underwear, shoes and work boots, blankets & bedding, his wallet, and lots of tools including "every kind of carpentry tool you could think of" that Smith used at his job. (Smith Depo. p. 31-32, 50, 52, 64-65, 97, 108). Smith documented these items in a 9 page list he compiled shortly after the incident. (*Id* at p.65)

The defendant suggests that Smith could have simply been the victim of theft, when they state in their motion, "Smith's allegations do not support any reasonable inference that the City was involved in his property loss, so whatever claim he might have is not against the City." (ECF No. 39 at p.18).

It may even be possible that a thief would have the ability or desire to steal *all* of the property described in Smith's nine-page list. A jury, however, could find that a more reasonable

4 – OPINION AND ORDER

explanation for the disappearance of *all* Smith's property was due to the City's cleanup; an activity which included using multiple city workers, dump trucks and other heavy equipment to remove large amounts of items in short periods of time. (ECF No. 44-3 at pp. 8, 147; ECF No. 57 p.18). Or a jury might agree with Smith who, when asked in his deposition how he knew someone else (not the City) didn't just take his property, opines "Because I'm not stupid. It was obvious that Parks & Rec had been there. Nobody could just, you know, by hand move my stuff out of there that fast." (Smith Depo. p.65). Either theory is possible, but these are issues of material fact for the jury to decide.

The defendant also argues that Smith did not exercise due diligence in trying to retrieve any of his property from the City (if it was even taken at all). Although it is undisputed that Smith called the police department multiple times in an effort to locate his property, he did not contact the specific police officer responsible for such matters and he did not leave a phone number where he could be reached. The defendant argues that it was impossible for the police or any other city department to contact Smith.

There are two problems with this argument. First, the defendant claims that having the appropriate police officer call Smith back was "not an option" because Smith did not have a working cell phone at the time. (ECF No. 39 at p. 11.). It is undisputed that Smith did not have a working cell phone. However, when Smith was asked during his deposition if he ever left a phone number he could be reached at, Smith answered "I believe I left either Jeff [Sharp]'s phone number or the Drop-In Center's phone number once. But you know, each time I was told to try back at a different time." (Smith Depo. p. 143). Second, from a further reading of Smith's deposition transcript, it seems (at least arguably) that the police department may have refused to

5 – OPINION AND ORDER

give Smith the name of the responsible officer; "They [the police receptionist] just told me 'officer.'" (Smith Depo. p.79).

Smith also claims to have contacted the Public Works and the Parks & Rec departments, which is where the dumpster was located that may have contained some of Smith's property. (Geist Depo at pp.47-48). But when Smith called these departments, he was directed to contact the police department instead. (Smith Depo. p.73)

Smith even went so far as to physically go into the police department to try to get answers. (Smith Depo. p.73-80). It was there that the receptionist allegedly told him that his property was probably already at the landfill, prompting Smith to discontinue his attempts to find his property. (*Id*).

Even if Smith had been able to find the dumpster, it is not clear that it would have contained any of his property because it may have already been emptied at the landfill (as the plaintiff contends) or it may not have contained any of Smith's property because the city never took any of it to begin with (as the defendant claims). And even if he had found the dumpster and it did in fact contain his property, the city's practice of dumping property into a dumpster that is difficult to access and which contains other hazardous materials is not "storing" it or making it "reasonably available" for the purpose of fulfilling the obligations of the state statute (ORS 203.079), an issue which is addressed later in further detail in the discussion of plaintiff Albreacht's claims. Regardless, a reasonable juror who has had an occasion to deal with a government agency could find that Smith used more than sufficient due diligence in trying to contact the city to retrieve his property.

In their brief, the defendant attempts to make an issue of Mr. Smith's confusion over the date of the incident in question. Smith initially believed the cleanup occurred on March 15, 2014

6 – OPINION AND ORDER

as opposed to the correct date of August 5, 2014. Defense counsel states that Mr. Smith is

"equally certain it occurred near the end of winter or the beginning of spring in 2014 [March 15],

as he is that it occurred in August of 2014, as pled in his original Complaint." (ECF No. 39 at p.

10.). A cursory review of Smith's deposition however, quickly dispels the notion that the Smith

was uncertain of the date. Very early in the deposition, it is defense counsel who introduces the

March date to Smith: "So March 15, 2014 was where the 'X' is, right?" (referring to a map

where Smith had drawn an "X" to show the location of his campsite), and then reintroduced to

Smith again as, "the 'X' occasion we're going to talk about on March 15, 2014?" (Smith Depo.

p. 28; 32).

The Court is not suggesting that defense counsel was purposely intending to confuse

Smith, but the use of suggestive questioning with the March 15 date could have contributed to

Smith's perceived confusion over the date of the incident. Regardless, the correct date (August

5, 2014) is properly stated in the original Complaint (ECF No. 2 at p. 3), and Smith confirmed it

during his deposition. (Smith Depo. pp. 108-110). The assertion that Smith is confused as to the

date of the cleanup is an over inflated argument upon review of the actual record in this case.

For these reasons, defendant's motion to dismiss Smith as a plaintiff in this case is

DENIED.

## B. Plaintiff Kimball Craig

The defendant seeks to dismiss Kimball Craig as a plaintiff in this case because the land

on which Mr. Craig was camped in October 2014 (somewhere "behind the Shari's restaurant on

9th.") is neither owned nor maintained by the City of Corvallis and the city never does cleanups

of homeless camps located on private property. (ECF No. 39 at p.12; ECF No. 62 at p 6). The

plaintiffs argue that facts are in dispute and that the city was involved. (ECF No. 57 at p. 11).

7 – OPINION AND ORDER

It seems undisputed that Craig's campsite was on private property. The plaintiffs rely on circumstantial evidence to assert that only the defendant would be capable of such a large undertaking in removing the large amount of property left at Craig's campsite, and that the Corvallis Police posted the notices. (Craig Depo. pp. 54-55, 61). According to Craig, there were "several crews" and trucks involved in the cleanup efforts, which "chopped up" his property using buzz saws before taking everything to the landfill. (*Id* at pp. 18, 61). Craig also claims that he was warned by a City of Corvallis police officer not to go to the area of his campsite during the cleanup operation. (*Id* at. pp. 29, 32-33).

It is undisputed that Craig received some kind of written 24-hour notice prior to the October 2014 cleanup of his campsite and that it resembles the notices the City used. (Craig Depo. p.31). What is disputed is whether that notice was posted by the defendant (City of Corvallis) or some private entity (such as Shari's Restaurant). Craig claims that the notice was posted by Corvallis police officers (Craig Depo. p.61).

The veracity of Mr. Craig's assertions is an issue for the jury to decide. It is plausible that the defendant had no involvement whatsoever in the posting of Craig's campsite or in the removal of any of his property. Due to the lack of record keeping by the defendant and other circumstantial evidence, it is at least arguable, in a light most favorable to the plaintiff, that the defendant's agents did in fact post Craig's campsite, destroy and remove his property, and warn him from returning to the area on the day of the cleanup. Therefore, defendant's motion to dismiss Mr. Craig as a plaintiff in this case is DENIED.

## C. Plaintiff Karen Albreacht

The defendant seeks to dismiss Karen Albreacht as a plaintiff in this case because they argue that the property that they admittedly took from Albreacht's campsite on two occasions

was available for her to retrieve as required by state law and, that on a third occasion, Albreacht made no attempt to retrieve her property. (ECF No. 39 at pp.18-20). The defendant also argues, in the alternative, that Albreacht's claims should be bifurcated. (*Id.*)

The City argues that their past practice of dumping property into a dumpster that is hard to access and contains other hazardous materials including dog feces (see Albreacht Depo. at p. 70), constitutes "storing" the property and making it "reasonably available" for the purpose of fulfilling the obligations under ORS 203.079. At a minimum, the Court finds that a reasonable juror could conclude that the city's practice of making property retrievable only by "dumpster diving" does not satisfy the requirements of ORS 203.079. Therefore the first two occasions claimed by Albreacht in her complaint are ripe for consideration in this case.

The veracity of Ms. Albreacht's additional assertion (regarding the third incident) is an issue for the jury to decide. Similar to their argument regarding Smith's claims, the defendant asserts that "the stronger presumption is that her [Albreacht's] property was taken by someone other than the City." (ECF No. 39 at p.18). While the defendant can argue that it is reasonably plausible that Albreacht's property was actually stolen by someone not affiliated with the defendant, it is equally plausible that the defendant was involved. This is an issue of material fact for the jury to decide at trial.

The defendant's alternative motion to bifurcate Albreacht's claims was based on the presumption that this Court would dismiss the individual complaints of Smith and Craig. (ECF No. 39 at p.20). Since this Court has not done so, the defendant's alternative motion is moot.

Therefore, defendant's motion to dismiss Ms. Albreacht as a plaintiff in this case is DENIED. Defendant's alternative motion to bifurcate Albreacht's claims is also DENIED.

## D. Fourth Amendment Search & Seizure

The defendant seeks to dismiss the plaintiffs' claims brought under 42 U.S.C. § 1983 for alleged violations of the plaintiffs' rights under the 4th Amendment arguing that such a claim is unwarranted because all of the property seized by the City was "abandoned." (ECF No. 39 at pp. 20-25).

As the defendant correctly states in their brief, if a person has *voluntarily* abandoned property, they have no standing to complain of its search or seizure under the Fourth Amendment. *Abel v. United States,* 362 U.S. 217, 240-241 (1960) and *United States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir. 1986). (*Id* at pp. 20-21). They argue that the city was not involved in removing any property in which any of the plaintiffs retained a privacy or possessory interest or, that if they did, any such removed property was voluntarily abandoned, and thus not subject to the protections of the 4th Amendment. (ECF No. 39 at pp. 20-25).

Whether or not the plaintiffs voluntarily abandoned their property, however, is a disputed issue of material fact. Indeed, plaintiffs claim that they neither discarded nor abandoned their personal property. (ECF No. 57 at p.32). Whether property is abandoned is a factual finding. See *U.S. v. Nordling,* at 1469.

The plaintiffs also argue, and this Court agrees, that the defendant's insufficient notice (in form and in process) give rise to their 4th Amendment claims. Specifically, the plaintiffs argue that the notice failed to inform the plaintiffs that it was almost certain (more than 99% likely) that their property would be immediately discarded (in either the dumpster or directly to the landfill – an issue which is disputed), nor did it inform then where any property *not* immediately discarded would be retained or how it could be reclaimed. Further, the notices contained inaccurate information regarding the City agency involved in the cleanup of the Plaintiffs'

10 – OPINION AND ORDER

campsites (it identified the Police when it was actually the City's Parks & Rec Department *or* the City's Public Works Department). And while the City asserts that it would sometimes *orally* provide information to individuals regarding how and where their personal property could be retrieved (if anyone happened to be present), this practice was insufficient to establish actual notice to the property owners and did not comply with state law (ORS 203.079). (ECF No. 57 at pp. 29-30).

The Court also agrees with the plaintiffs when they argue that even if the defendant provided adequate notice to Plaintiffs, a genuine issue of material fact exists as to whether the plaintiffs' rights to be free from illegal searches and seizures were violated in contravention of the notice. (ECF No. 57 at pp. 30-31). The plaintiffs cite *Lavan v. City of Los Angeles*, wherein the Court held that the homeless plaintiffs established a strong likelihood of success on the merits of their claim that the City of Los Angeles' seizure and destruction of their un-abandoned personal property violated their constitutional rights because even if the city's notice postings concerning impending cleanups on street signs was adequate, the plaintiffs nonetheless demonstrated a lack of opportunity to be heard because there was no adequate recourse made available for the recovery of their property. *Lavan v. City of Los Angeles,* 797 F. Supp. 2d 1005 (C.D. Cal. 2011).

Here, the same argument can be made. In the allegations viewed in the light most favorable to the plaintiffs, the defendant's actions in discarding the plaintiffs' property immediately after seizing it, in failing to provide sufficient notice, and in failing to provide procedural protections to individuals who were not aware of the notice could be seen as violating the plaintiffs' rights to be free from illegal searches and seizures under the 4th Amendment.

Therefore, defendant's motion to dismiss plaintiffs' claims brought under 42 U.S.C. § 1983 for alleged violations of at least one of the plaintiff's rights under the 4th Amendment for illegal search and seizure is DENIED.

### E. Fourteenth Amendment Procedural Due Process

The defendant seeks to dismiss the plaintiffs' claims brought under 42 U.S.C. § 1983 for alleged violations of the plaintiffs' rights under the 14th Amendment's Procedural Due Process Clause, based on the theory that all the plaintiffs were afforded adequate pre-deprivation and post-deprivation remedies, because the City's notice procedures were sufficient, and because it was objectively reasonable to believe that any property seized by City employees had been abandoned. (ECF No. 39 at pp. 25-28).

Under the *Matthews v. Eldridge* test, a court is to consider three factors to determine whether the basic procedural due process requirements have been met: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Matthews v. Eldridge*, 424 U.S. 319, 321, 96 S.Ct. 893 (2006).

The defendant claims that the plaintiffs' *pre*-deprivation remedies were adequate because they provided sufficient 24-hour notices as required by law, that any property left by the plaintiffs was abandoned and thus the plaintiffs had relinquished their interest in the property, and that procedural safeguards were in place which allowed plaintiffs to retrieve any non-abandoned property. (ECF No. 39 at pp. 26-28).

In regards to the 24-hour notice, while the plaintiffs concede that the defendant posted 24-hour notices at the plaintiffs' campsites, genuine issues of material fact exist as to whether each of the plaintiffs was provided with *adequate* notice. As previously discussed in their 4th Amendment claims, the plaintiffs identify multiple concerns regarding the adequacy of the form

12 – OPINION AND ORDER

of the notice. The form fails to accurately inform the plaintiffs where there property would be located, it includes inaccurate information regarding the City agency involved in the seizure of their property, and it fails to notify how the correct agency could be contacted. (ECF No. 57 at pp. 29-31). For these reasons, the sufficiency of the defendant's notice is a valid basis for the plaintiff's 14th Amendment procedural due process claim in addition to their 4th amendment claim.

As to the issue of whether or not safeguards were in place to prevent the erroneous deprivation of the plaintiff's property, the defendant claims that the City did not have any way of knowing who the property belonged to, nor would the City have a way of locating or contacting the plaintiffs. (ECF No. 39 at p. 27). This assertion in contradicted by Smith's claims that he left numbers with the defendant and was repeatedly told to come back at a different time: "I believe I left either Jeff [Sharp]'s phone number or the Drop-In Center's phone number once. But you know, each time I was told to try back at a different time." (Smith Depo. p. 143).

It may or may not be reasonable for the city to investigate the identity of the owner of the seized property. Valid safety and health reasons aimed at protecting its employees may make the city rightfully hesitant. It does not require a leap of faith to believe that within property such as backpacks there would be found some type of identification pointing to the owner. For example, when plaintiff Smith was asked about where he currently keeps his possessions, he answered, "all that I own now is two backpacks." (Smith Depo. at p. 28). And yet there is evidence in the record that on several occasions City workers did not even open backpacks to look inside for identification of the owner, and any backpacks that City workers thought looked "soiled" would simply "go to the landfill" (Geist Depo. at p. 46). It seems that only instances in which City workers would make an attempt to determine the identity of the owner would be in instances

13 – OPINION AND ORDER

where "if there's any identifying information *on* that piece of property like a luggage tag or other identifying information, maybe someone wrote their name *on* a backpack." (Hendrickson Depo. at p. 19).

The City further admits that the procedures for property held at the Parks & Recreation department were different than property held at the police department. (Hendrickson Depo. at p. 20). Whereas property held by the police department was properly stored for safekeeping and held for at least 30 days, property held by the Parks & Recreation department was simply thrown into a dumpster where it would be held until the dumpster was full and then sent to the landfill. (Geist Depo. at p.37). The defendant also admits that there was no stated or codified criteria for determining what property was "soiled" or "unusable" (*Id* at p.38). Even the people making the determinations were different depending on the occasion; sometimes it was the police, sometimes it was the Parks Department workers, sometimes it was both. (*Id*).

Finally, with regard to the burden on the city that must be analyzed in the fourth prong of the *Matthews* test, it is clear that the practice of inventorying and storing the personal property of the homeless cannot be seen as posing an undue logistical burden. The defendant admits that it is already required to do so by state law under ORS 203.079. (ECF No. 39 at p.16).

The adequate *post*-deprivation remedies the defendant points to are the plaintiffs' ability to retrieve their property from the City (if the property was held for safekeeping) and the plaintiffs' ability to file this lawsuit for damages. (ECF No. 39 at pp. 25-26). The plaintiffs argue that there is a disputed issue of material fact as to whether or not the post-deprivation remedy of property retrieval was even possible because in some instances they allege that the plaintiff's property was immediately discarded into the landfill rather than held for 30 days as required by law. Clouding this issue is the City's lack of record keeping on precisely when the

14 – OPINION AND ORDER

dumpster located at the Parks & Rec Department was taken to the landfill. The defendant cites how *often* (about once every other month on average) the dumpster was emptied, but it is silent on exactly *when* these "dumps" took place. (ECF No. 39 at p. 9). While it may be true that the dumpsters were only emptied about every other month as the defendant claims, there is nothing in the record to disprove the allegation that while the dumpsters may have sat around for months, they were considered "full" immediately after a large cleanup effort, thus requiring an immediate emptying at the landfill.

Additionally, as previously noted in the discussion of plaintiff Albreacht's claims, this Court finds that a reasonable juror could conclude that the city's practice of making property retrievable only by "dumpster diving" does not satisfy the requirements of ORS 203.079, and thus the same conclusion could be reached to determine that the defendant's post-deprivation remedies were not adequate under the standards for due process.

The Court is also not persuaded by the defendant's assertion that the plaintiffs' ability to file this lawsuit for damages satisfies *post*-deprivation due process. Instead, the Court is in agreement with plaintiffs in that the argument that plaintiffs may still sue the City does not excuse the City's (alleged) violation of their due process rights, and that if post-deprivation remedies were actually available to the plaintiffs (a fact disputed by plaintiffs), money damages cannot always compensate for the loss of all personal property (family mementos, identification, medications, pictures, stored information, etc.).

Therefore, defendant's motion to dismiss plaintiffs' claims brought under 42 U.S.C. § 1983 for alleged violations of at least one of the plaintiff's Procedural Due Process rights under the 14th Amendment is DENIED.

15 – OPINION AND ORDER

## F. Fourteenth Amendment Equal Protection

The defendant seeks to dismiss the plaintiffs' claims brought under 42 U.S.C. § 1983 for alleged violations of the plaintiffs' rights under the 14th Amendment's Equal Protection Clause. (ECF No. 39 at p. 28).

The Ninth Circuit has repeatedly found that being homeless is not a suspect or even a quasi-suspect class. *Joyce v. City and County of San Francisco*, 87 F3d 1320 (9th Cir. 1996), *Roulette v. City of Seattle*, 78 F3d 1425 (9th Cir. 1996). Oregon courts have echoed federal law when engaging in equal protection analysis. "Wealth or lack of it is not a suspect classification." *State v. Anderson*, 66 Or. App 855, 859, 577 P2d 39 (1984) (citing *San Antonio School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278 (1973)); *see also Ritchie v. Board of Parole*, 35 Or. App. 711, 717, 583 P2d 1 (1978).

A city has a legitimate interest in pursuing the goals of sanitation, public health, safety, and aesthetics on public property. The defendant is entitled to judgment as a matter of law regarding the plaintiff's 14th Amendment *Equal Protection* claim because there is no evidence in the record that the property of any of the three plaintiffs was treated any differently than that of any property belonging to any other illegal campers collected by the City during their cleanups.

For these reasons, the plaintiff's claim based on the equal protection clause of the 14th Amendment is DISMISSED.

## G. Fifth Amendment Takings Clause

The defendant moves to dismiss plaintiffs' 5th Amendment (takings clause) claim. (ECF No. 39 at pp. 30-31). They argue that the plaintiffs cannot make such a claim unless and until they have exhausted all adequate state procedures and remedies for seeking just compensation and have been denied just compensation from the state.

The plaintiffs argue that they have standing to bring a 5th Amendment claim because they have either exhausted their state remedies by filing a tort claim notice, or in the alternative they are not required to because doing so would be "futile," as reflected by "the City's rejection of the tort claim and its aggressive defense to Plaintiffs' claims." (ECF No. 57 at p. 39).

The plaintiffs do not cite any case law supporting their position that the filing of a tort claim notice satisfies the exhaustion requirement for a 5th Amendment takings clause claim. And, as the defendant correctly asserts, the futility exception to the exhaustion requirement applies only when there is a *certainty* of an adverse decision or that further pursuit of administrative remedies would be clearly useless.

Whether or not the defendant is "aggressively" defending themselves against the plaintiff's claims is immaterial. Within reason, all parties are entitled to plead their cases as vigorously as they want. Therefore, plaintiffs' 5th Amendment claim is DISMISSED.

### H. Eighth Amendment Cruel & Unusual Punishment

The defendant moves to dismiss plaintiffs' 8th Amendment (cruel & unusual punishment) claim. (ECF No. 39 at pp. 29-30). The Plaintiffs argue that they have a valid 8th Amendment claim because they can identify past and future injuries involving the loss of personal property, and they are likely to be similarly injured in the future because they have no home in which to store their personal property. They cite *Anderson v. City of Portland*, 2009 U.S. Dist. LEXIS 67519, which held that homeless plaintiffs who had been arrested for violating the city's homeless ordinances could maintain an 8th amendment claim because they would be "likely to violate the ordinances in the future by sleeping in public places, because they had no other place to sleep." (ECF No. 57 at pp.36-37).

However, the *Anderson* court later granted defendant's motion for summary judgment after finding that the plaintiffs failed to present specific evidence as to how the ordinances were enforced, even though the plaintiffs were all issued criminal citations and convicted for sleeping on public property. Here, none of the plaintiffs have alleged that they were ever arrested or faced any criminal charges, citations, or fines of any kind in connection with the facts in this case. Because the criminal justice system was never utilized or instigated by the defendant against the plaintiffs, the plaintiffs' 8th amendment claim is DISMISSED.

## I.  Intrusion Upon Seclusion

The defendant moves to dismiss the plaintiffs' claim for a separate invasion of privacy tort based on a theory of Intrusion Upon Seclusion. (ECF No. 39 at pp. 32-33).  Under Oregon law, Intrusion Upon Seclusion requires the plaintiffs to prove: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person. *Mauri v. Smith*, 324 Or. 476, 482-83, 929 P2d 307 (1996) (quoting Restatement (Second) of Torts §652B (1977)).

With regard to the "intent" element, there are no allegations that the defendant intended or attempted to gain or glean any private information about the plaintiffs by seizing their property. Rather, the plaintiffs' allegation is that their property was seized and then *discarded*. In regards to the second "private affairs or concern" element, there is no evidence that the plaintiffs' property was ever examined for any purpose related to intentionally intruding on their privacy and none of the plaintiffs were even present when their belongings were taken.

For these reasons, the plaintiffs' Intrusion Upon Seclusion claim is DISMISSED.

### J.  Oregon State Law Constitutional and Conversion Claims

The defendant seeks to dismiss the plaintiffs' claims arising under the Oregon State

Constitution and common law conversion. (ECF No. 39 at pp. 30-35).  Plaintiffs' claims under

the State of Oregon's Constitution and state common law (including conversion), are state law

claims which must be adjudicated in an Oregon State court before they are ripe for review by a

Federal Court.  *Dodd v. Hood River County*, 59 F3d 852 (9th Cir. 1995).  This assertion is not

refuted in Plaintiff's reply brief and the Court takes the defendant's position.

Therefore, plaintiffs' claims arising under the Oregon State Constitution and for common

law conversion are DISMISSED.

### K.  Punitive Damages

The defendant moves to dismiss the potential punitive damages remedy asserted by the

plaintiffs.  A municipality is immune from punitive damages under 42 U.S.C. § 1983.  *City of*

*Newport v. Fact Concerns, Inc.*, 453 U.S. 247, 271 (1981).  Only punitive damages imposed on

*individual* defendants *may* be paid for by municipalities if the municipality so chooses to

indemnify their employees.  *Cornwell v. City of Riverside*, 896 F.2d 398 (9th Cir. 1990).

There are no individual defendants remaining in this case. (ECF No. 30).

Here the law is clear and plaintiffs' claim for punitive damages is DISMISSED for the

reasons stated above and as discussed on the record during oral arguments on May 11, 2016.

### L.  Declaratory Judgment & Injunctive Relief

For the reasons stated above in the discussion of the plaintiffs' claims for relief based on

alleged violations of the 4th Amendment (Search & Seizure) and the 14th Amendment (Due

Process), the plaintiff's requests for Declaratory Judgment & Injunctive Relief remain viable

avenues for relief.  A more detailed analysis will be made after trial, once additional findings of

19 – OPINION AND ORDER

fact have been made on the record and more specific requests for these two remedies have been

submitted to the Court for consideration. The Court anticipates that such relief will probably be

limited to the issues of insufficiency of notice and city's policies and procedures related to the

retention and safekeeping of property.

## II.    Motion for Class Certification

The plaintiffs seek to certify a class described as:

All homeless persons who camped within the city limits of the City of Corvallis, Oregon, or in adjacent areas policed by City agents on or after August 26, 2012, and whose personal property located at his or her campsite was seized, confiscated, destroyed and/or discarded by City agents pursuant to City policy without adequate notice and without due process of law and/or whose personal property was seized by City agents and not retained for at least 30 days.

(ECF No. 45 at p.6).

As discussed in the Standard of Review section above, in order for the plaintiffs to

successfully move for class certification, they must satisfy all four of the requirements of Fed. R.

Civ. P. 23(a), namely: numerosity, commonality, typicality, and adequacy of representation.

Plaintiffs fail to satisfy the numerosity and commonality requirements. There are only

three individual plaintiffs in this case. Despite plaintiffs claim that "up to 200" homeless

individuals live in or around Corvallis (ECF No. 45 at pp. 8, 20, 30), there is no reliable evidence

on the record to show how many potential class members there might be, and no additional

potential individual plaintiffs have been identified. Therefore the numerosity requirement for

class certification has not been met and plaintiffs' motion fails.

The plaintiffs' motion also fails based on the commonality requirement for class

certification because each plaintiff's claims are based on facts and dates that are separate and

distinct from each other. Each plaintiff also has different amounts of potential damages that will

20 – OPINION AND ORDER

have to be determined individually. Each plaintiff also carries different burdens regarding their own credibility. Therefore, the plaintiffs' motion for class certification also fails the commonality requirement.

This matter is simply not appropriate for class certification. The individual plaintiff's claims are too distinct from even each other to satisfy the requirements of a class action, let alone any additional potential class members. Any future protections for other homeless individuals living in or around Corvallis can still be accomplished through the injunctive relief plaintiffs already seek. For these reasons and as discussed on the record on May 11, 2016 (ECF No. 67), plaintiffs' Motion to Certify the Class (ECF No. 45) is DENIED.

## CONCLUSION

For these reasons, and as discussed on the record on May 11, 2016 (ECF No. 67), Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED in part and DENIED in part as outlined above, and Plaintiffs' Motion to Certify the Class (ECF No. 45) is DENIED.

IT IS SO ORDERED.

DATED this _6_ day of June, 2016.

**Michael J. McShane**
**United States District Judge**

21 – OPINION AND ORDER